UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BANK OF AMERICA,
NATIONAL ASSOCIATION**,

    Plaintiff,

v.                                                Case No. 8:22-cv-2800-WFJ-JSS

**JAMES GIEHL**,

    Defendant.
_____/

## ORDER

This matter arises from Defendant James Giehl's Notice of Removal (Dkt. 1). Therein, Mr. Giehl requests that the Court review and ultimately void two Florida state-court judgments. Because the Court lacks jurisdiction to do so, the Court remands Mr. Giehl's case to state court *sua sponte*.

## BACKGROUND

On August 20, 2014, Sienna Condominium Association, Inc. secured a final judgment of foreclosure against Jason Young that resulted in the sale of Mr. Young's condominium (the "Property"). Dkt. 1-7 at 316, 323. Mr. Giehl purchased the Property at public auction for $23,567.00. *Id.* at 323. No objections to the sale were filed. *Id.* Mr. Giehl believed that he had obtained the Property unencumbered and allegedly began expending time and resources to improve it. Dkt. 1-8 at 335.

Around September 2017, however, Mr. Giehl learned that Bank of America had brought an action to foreclose on a mortgage on the Property in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida. Dkt. 1-7 at 291. The subject mortgage dated back to a 2006 promissory note that Mr. Young had executed with Bank of America. Dkt. 1-2 at 1. Mr. Young defaulted on the promissory note in 2010, approximately four years prior to the 2014 foreclosure action. *Id.* at 10.

In November 2018, the Sarasota County Circuit Court granted a judicial default to Bank of America against Mr. Young, Mr. Giehl, Sienna Condominium Association, and the City of Sarasota (the parties holding a potential interest in the Property). Dkt. 1-8 at 111–13. A uniform final judgment of mortgage foreclosure was then granted to Bank of America on March 27, 2019, and the Property was set to be sold at public auction. *Id.* at 202. Mr. Giehl moved to stop the foreclosure sale but was unsuccessful. *Id.* at 210, 220, 283. Bank of America bought the Property for one dollar in August 2019. *Id.* at 287.

Between September and November 2019, Mr. Giehl appealed to the Florida Second District Court of Appeal and attempted to file a property lien in the Sarasota County Circuit Court. *Id.* at 297–98. Mr. Giehl's efforts were ultimately fruitless. Dkt. 1-8 at 339; Dkt. 1-9 at 689, 746. Mr. Giehl therefore appealed to the Second District Court of Appeal again in 2022, this time challenging the Sarasota County

Circuit Court's orders dissolving Mr. Giehl's recorded *lis pendens* and denying Mr. Giehl further relief. Dkt. 1-9 at 760, 763.

On December 12, 2022, while his case was on appeal in the Second District Court of Appeal, Mr. Giehl removed his case to this Court. Dkt. 1. He stated that "this case is being transferred to the U.S. District Court[.]" *Id.* at 1, 4. Mr. Giehl now requests that this Court accept "[t]his transfer request," *Id.* at 5, and provide relief and restitution from the wrongful orders of both the Sarasota County Circuit Court and the Second District Court of Appeal. *Id.* at 29. Mr. Giehl contends that said orders violated multiple federal laws. *Id.* at 5.

## LEGAL STANDARD

28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." It "does not authorize district courts to exercise appellate jurisdiction over state-court judgments[.]" *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 644, n.3 (2002).

This limitation—established under the *Rooker-Feldman* doctrine—functions to prevent district courts from exercising subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi*

3

*Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Eleventh Circuit has made clear that *Rooker-Feldman* applies "both to claims that were actually raised in the state court and to those inextricably intertwined with the state court's judgment." *Barone v. Wells Fargo Bank, N.A.*, 709 F. App'x 943, 947 (11th Cir. 2017) (citations and internal quotations omitted). "A claim is inextricably intertwined if it would effectively nullify the state court judgment . . . or it succeeds only to the extent that the state court wrongly decided the issues." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citations and internal quotations omitted).

## DISCUSSION

Mr. Giehl presents three claims for relief from the state court judgments against him. Dkt. 1 at 5. The Court will address each in turn.

*I.     Mr. Giehl's Constitutional Claim*

Mr. Giehl first claims that the Sarasota County Circuit Court and the Second District Court of Appeal violated his 4th Amendment rights by illegally taking (and affirming the taking of) the Property. Dkt. 1 at 5. Mr. Giehl argues that this taking was illegal because the state courts either ignored or failed to properly apply legal precedent that supported his case. *Id.* at 10–14. In other words, Mr. Giehl maintains that the state courts wrongly decided the issues on the merits.

This is a quintessential example of a clam "inextricably intertwined" with state court judgments. Its success is wholly predicated on the Court finding that both

the Sarasota County Circuit Court and the Second District Court of Appeal wrongly decided the property issues underlying their judgments. It would require the Court to sit in direct review of both state courts' legal conclusions. The Court has no power to do so where Mr. Giehl had a reasonable opportunity to raise this claim in the state proceedings. *See Powell v. Powell*, 80 F.3d 464, 466–67 (11th Cir. 1996) (finding that a federal claim will not be considered inextricably intertwined where a movant had no reasonable opportunity to raise the federal claim in state proceedings). This claim is barred under the *Rooker-Feldman* doctrine. *See Casale*, 558 F.3d at 1261 (stating that, "[i]f the [state-court loser] believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal").

    II.    *Mr. Giehl's Jurisdictional Claim*

Mr. Giehl next claims that the Sarasota Circuit Court and the Second District Court of Appeal lacked jurisdiction to rule on all federal issues listed in his original case and appeal. Dkt. 1 at 18. Accordingly, Mr. Giehl requests that the Court revisit the federal issues presented by these state court proceedings.

As a preliminary matter, "[i]n our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located." *Powell*, 80 F.3d at 467 (citations and internal quotations omitted). It is a well settled principle of federalism that

"[s]tate and federal courts are [both] free to decide federal law issues for themselves (unless and until the United States Supreme Court settles the matter)." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1033 (11th Cir. 2003).

That being the case, nothing prevented Mr. Giehl from fully presenting his federal claims to the state courts he complains of. And nothing prevented said state courts from addressing his federal claims. To address them now would be to address claims inextricably intertwined with the state courts' judgments. The Court cannot do this for the reasons explained above.

### III.   *Mr. Giehl's 18 U.S.C. § 242 Claim.*

Mr. Giehl finally claims that the Sarasota Circuit Court and the Second District Court of Appeal violated 18 U.S.C. § 242 by depriving him of his rights under color of law. Put otherwise, Mr. Giehl maintains that the state courts violated 18 U.S.C. § 242 by wrongly deciding state law issues.

This claim is barred by *Rooker-Feldman* for the same reasons as Mr. Giehl's other claims. It asks the Court to review and reject the judgments of two state-courts which were rendered before this proceeding commenced. Moreover, it is entirely based on Mr. Giehl's belief that the state courts' judgments were wrong on the merits. The Court cannot sit in appellate review of Florida state courts.

## CONCLUSION

This complaint "is just the sort of state-court loser the *Rooker-Feldman* doctrine was designed to turn aside." *Casale*, 558 F.3d at 1261 (citations and internal quotations omitted). Mr. Giehl's claims would either nullify the state courts' judgments or would succeed only to the extent that the state courts wrongly decided the issues. The Court has no subject-matter jurisdiction over these inextricably intertwined claims.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**: Mr. Giehl's case is **REMANDED** to state court for lack of subject-matter jurisdiction. The Clerk is directed to remand Mr. Giehl's case to the Twelfth Judicial Circuit in and for Sarasota County, Florida. After accomplishing remand, the Clerk is directed to terminate any pending motions and close this case.

**DONE AND ORDERED** at Tampa, Florida, on February 23, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record